## A91A2101. N. S. COMPANY, INC. v. CINCINNATI INSURANCE COMPANY.
### (416 SE2d 859)

ANDREWS, Judge.

This is an appeal from the trial court's grant of the Cincinnati Insurance Company's motion for summary judgment arising out of the following facts:

N. S. Company is in the business of manufacturing and selling wholesale jewelry. It procured an employee dishonesty bond from appellee, the Cincinnati Insurance Company, which provided protection to N. S. Company for losses caused by the fraudulent or dishonest acts of employees.

This lawsuit arose from the acts of an outside salesman for N. S. Company, Chris Scott. In 1989, apparently because of the bankruptcy of one of his customers, Scott failed to pay N. S. Company amounts it was owed. As part of its efforts to recoup the money lost, N. S. Company filed a claim with Cincinnati.

Cincinnati denied the claim and N. S. filed the underlying lawsuit. Cincinnati then filed a motion for summary judgment claiming that Scott did not commit any fraudulent or dishonest act, that Scott was an independent contractor, not an employee of N. S., and that the claim was not timely filed. The superior court granted the motion on the first two grounds and from that order, N. S. Company appeals.

In its first enumeration of error, N. S. Company claims that the trial court erred in ruling that there were no genuine issues of material fact regarding Scott's employment.

The Cincinnati policy provided coverage for the dishonest or fraudulent acts of "employees." The policy defined employee as "any natural person (except a director or trustee of the insured, if a corporation, who is not also an officer or employee thereof in some other capacity) while in the regular service of the Insured in the ordinary course of the Insured's business during the Effective Period of this endorsement and whom the Insured compensates by salary, wages or commissions and has the right to govern and direct in the performance of such service, but does not mean any broker, factor, commission merchant, consignee, contractor or other agent or representative of the same general character."

In determining who is an employee within the context of this type of policy, "[w]here the insured exercises control over the defaulting agent, employment generally will be found." 9A Appleman, Insurance Law & Practice, § 5662; see, e.g., *Glens Falls Indem. Co. v. Got-*

*tlieb*, 76 Ga. App. 70 (44 SE2d 706) (1947). Further, "[t]he essential test of the existence of a covered employment relationship is the fact that the insured employer has control over the conduct or operations of the alleged employee, and it is significant that a given person was in fact treated by the insured employer as being his employee." 13 Couch, Insurance, 2d ed., § 46:26; see generally *Third Fed. Savings &c. Loan Assn. v. Fireman's Fund Ins. Co.*, 548 F2d 166 (6th Cir. 1977); compare *New Orleans Furniture Mfg. Co. v. Great American Ins. Co.*, 413 F2d 1278 (5th Cir. 1969).

The policy language here provides that in order to qualify as an employee the employer must have the right to govern and direct the employee and that "contractors" are not covered by the policy. See generally *G & C Constr. v. St. Paul Fire &c. Ins. Co.*, 731 F2d 183 (4th Cir. 1984). Because the policy language here involves the same principles as those involved when determining whether an individual is an independent contractor or employee, we turn to non-insurance cases for guidance. Generally, "[i]n determining whether the relationship of parties under a contract for performance of labor is that of employer and servant or that of employer and independent contractor, the chief test lies in whether the contract gives, or the employer assumes, the right to control the time, manner and method of executing the work as distinguished from the right merely to require certain definite results in conformity to the contract." (Citations omitted.) *McGuire v. Ford Motor Credit Co.*, 162 Ga. App. 312, 313 (290 SE2d 487) (1982). "If one is employed generally to perform certain services it may be inferable that the employer retained the right to control the manner, method and means for performance of the contract. However, where there is a specific contract to do a certain piece of work according to specifications for a stipulated sum, it is inferable that the right of control was not retained and an independent contractor relation existed." *Dietrich v. Trust Co.*, 179 Ga. App. 330 (346 SE2d 107) (1986).

The undisputed evidence here was that Scott began working for N. S. as an outside salesman in January 1985. He worked out of his home selling N. S. merchandise, samples of which he had from the company, to jewelers and store owners. Initially, Scott was paid a draw against his commissions.

By 1987, Scott was paid only by commission and was directly invoiced for the N. S. merchandise he sold. In other words, Scott billed his customers for the N. S. merchandise and N. S. billed Scott for the goods. This practice differed from the N. S. practice with other salesmen in that ordinarily, N. S. invoiced the customer and not the salesman.

In 1987, Scott began operating other businesses and selling merchandise of other suppliers. In 1988, Scott became incorporated as

"Chris Scott Enterprises, Inc.," and after that he began paying invoices using "Chris Scott Enterprises, Inc." corporate checks.

It was undisputed that N. S. Company did not exercise control over the hours Scott worked, the merchandise he had or any other aspect of his operation. N. S. Company gave Scott no specific instructions regarding customers. Other than the general guideline that Scott was not to sell merchandise in New York or Virginia, N. S. Company did not direct Scott regarding the locations in which he sold jewelry. Scott was not required to report to N. S. Company regarding the places he had called on, or the hours he had worked. N. S. Company did not pay any benefits for Scott, did not pay social security taxes, did not withhold taxes from Scott's earnings and Scott received a 1099 form for the years in question. Scott was free to advertise his sales and to operate his business in any manner he chose. N. S. Company was aware that Scott operated different businesses and sold other merchandise. Evidence was that N. S. Company communicated with Scott about twice a month to determine the status of his sales.

Scott ultimately filed for both individual and corporate bankruptcy and in connection therewith, on August 22, 1989, listed his employer for the *past six years* as "Chris L. Scott Enterprises, Inc." His wife listed that she had also been previously employed by Chris L. Scott Enterprises, Inc., for three years. N. S. Company made a claim against Scott in the Chapter 13 reorganization plan as an unsecured creditor for goods purchased and N. S. was also listed as an unsecured creditor in the corporate Chapter 11 reorganization.

In arguing that summary judgment was improper, N. S. contends that there was evidence that Scott was an employee, since if he did not sell enough merchandise, his relationship with the company would be terminated. N. S. also argues that it exercised control over Scott in that the company instructed him not to sell in Virginia and in New York. N. S. claims that the severance of its relationship with Scott because of the unpaid balances also establishes an employer/employee relationship. Finally, N. S. argues that the fact that Chris Scott is listed as a salesman for whom coverage would apply on another insurance policy establishes that he was not an independent contractor.

N. S. Company's arguments are without merit. We find that undisputed evidence showed that N. S. Company did not assume the right to control the time, method, or manner of Scott's work. It is apparent that he was an independent contractor. See generally *Whitehall Chevrolet Co. v. Anderson*, 53 Ga. App. 406 (186 SE 135) (1936). As such, he is excluded from coverage under the terms of the Cincinnati policy and the trial court's grant of summary judgment was proper. See generally *Dennis v. Malt*, 196 Ga. App. 263, 265 (1) (395 SE2d 894) (1990); compare *Ledbetter v. Delight Wholesale Co.*,

191 Ga. App. 64 (380 SE2d 736) (1989). Because of our conclusion with respect to this enumeration, we need not address the remaining enumeration that the actions alleged did not fall within the policy coverage.

*Judgment affirmed. Sognier, C. J., and McMurray, P. J., concur.*

DECIDED MARCH 12, 1992.

*Cashin, Morton & Mullins, A. L. Mullins, Jr., Raymond C. Mayer, D. Todd Markle*, for appellant.

*Savell & Williams, Charles M. Dalziel, Jr., Jennifer H. Chapin*, for appellee.